**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**PHYLLIS WANAT, MONICA DOMINIQUE, AND AMY PERRIER AS ADMINISTRATIX OF THE ESTATE OF GARY MILO**,

Plaintiffs,

v.

**3M COMPANY, ET AL.**,

Defendants.

Civil Action No. 1:19-CV-00195-WES-LDA

**DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND**

Removed from Rhode Island Superior Court
Providence County
PC-2016-0865

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY .......................................7

ARGUMENT ........................................................................................................9

I. This Court Should Hold the Remand Motion in Abeyance Until After the Delaware District Court Decides the Venue Motion ........................9

II. J&J Timely and Properly Removed This Action Under Bankruptcy Rule 9027, 28 U.S.C. § 1452, and Applicable Local Rules ..................................11

III. This Court has Subject Matter Jurisdiction as "Related To" Debtors' Chapter 11 Case under 28 U.S.C. § 1334(b) ..........................................15

IV. This Court Should Not Conduct an Abstention Analysis, and Any Such Analysis Disfavors Abstaining Here .........................................................25

A. The Delaware District Court is the Proper Court to Conduct an Abstention Analysis ........................................................................25

B. Mandatory Abstention is Inapplicable Here Because 28 U.S.C. § 157(b)(4) Exempts Personal Injury and Wrongful Death Claims ..........26

C. This Court Should Decline to Permissively Abstain ................................27

V. Considerations Under Equitable Remand Support Denying Plaintiffs' Remand Motion ........................................................................................27

CONCLUSION .....................................................................................................33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.A. v. Soc'y of Jesus*,
No. C09-00262 MJP, 2009 WL 10676663 (W.D. Wash. May 7, 2009) ....10

*A.H. Robins Co., Inc. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) .... *passim*

*Abbatiello v. Monsanto Co.*,
No. 06 CIV. 266 (KMW), 2007 WL 747804 (S.D.N.Y. Mar. 8, 2007) ....26, 27, 31

*Arnold v. Garlock, Inc.*,
278 F.3d 426 (5th Cir. 2001) ....20, 21, 22

*In re Asbestos Litig.*,
CV No:01-1790-PA, 2002 U.S. Dist. LEXIS 3083 (D. Or. Feb. 1, 2002) ....13, 23

*In re Aztec Indus., Inc.*,
84 Bankr. 464 (Bankr. N.D. Ohio 1987)....12

*Bank of America NA v. Koola*,
2:16-1634-RMG, 2016 U.S. Dist. LEXIS 169165 (D.S.C. Dec. 28, 2016)....13

*Beck v. Victor Equip. Co.*,
277 B.R. 179 (S.D.N.Y. 2002)....26, 27

*Beighley v. FDIC*,
868 F.2d 776 (5th Cir. 1989) ....15

*Berry v. Pharmacia Corp.*,
316 B.R. 883 (S.D. Miss. 2004)....27, 31

*Bethlahmy v. Kuhlman (In re ACI-HDT Supply Co.)*,
205 B.R. 231 (9th Cir. Bankr. App. Panel 1997)....24

*In re Boston Reg'l Med. Ctr.*,
410 F.3d 100 (1st Cir. 2005) ....32

*Calumet Nat'l Bank v. Levine*,
179 B.R. 117 (N.D. Ind. 1995) ....9, 10

*Cenith Partners, L.P. by Rabinovitz v. Hambrecht & Quist (In re Videocart, Inc.)*,
165 B.R. 740 (1994)....17, 18

*In re Combustion Eng'g, Inc.*,
391 F.3d 190 (3d Cir. 2004)....................17, 21, 22

*Davis v. Ocwen Fed. Bank*,
No. 3:05cv1229-MHT (WO), 2006 U.S. Dist. LEXIS 3221 (M.D. Ala. Jan. 19, 2006)....................13

*In re Donington, Karcher, Salmond Ronan & Rainone, P.A.*,
194 B.R. 750 (D.N.J. 1996)....................11, 12

*In re Dow Corning Corp.*,
86 F.3d 482 (6th Cir. 1996).................... *passim*

*In re Fed.-Mogul Glob., Inc.*,
282 B.R. 301 (Bankr. D. Del. 2002)....................16, 18, 20

*In re Fed.-Mogul Glob., Inc.*,
300 F.3d 368 (3d Cir. 2002).................... *passim*

*In re Fietz*,
852 F.2d 455 (9th Cir. 1988)....................24

*Foster v. Chesapeake Ins. Co.*,
933 F.2d 1207 (3d Cir. 1991)....................14, 15

*GSL of Ill, LLC v. Pitt Penn Oil Co., LLC*,
No. 09cv0571, 2009 U.S. Dist. LEXIS 51428 (W.D. Pa. June 17, 2009)....................11

*Haber v. Massey*,
904 F. Supp. 2d 136 (D. Mass. 2012).................... *passim*

*Hopkins v. Plant Insulation Co.*,
342 B.R. 703 (D. Del. 2006)....................25, 27

*Hopkins v. Plant Insulation Co.*,
349 B.R. 805 (N.D. Cal. 2006)....................10

*Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*,
No. 01-2113 DA, 2001 WL 34048067 (W.D. Tenn. Apr. 3, 2001)....................9, 10, 14

*Kenny v. Wal-Mart Stores, Inc.*,
881 F.3d 786 (9th Cir. 2018)....................14

*In re Klober*
142 B.R. 300 (Bankr. E.D. Ark. 1992)....................12

*In re Lower Bucks Hosp.*,
488 B.R. 303 (E.D. Pa. 2013), aff'd, 571 F. App'x 139 (3d Cir. 2014)....................15, 18

*In re LTC Holdings, Inc.*,
587 B.R. 25 (Bankr. D. Del. 2018) ....................22, 23

*Messerlian v. A.O. Smith Corp.*,
C.A. No. 09-393S, 2009 U.S. Dist. LEXIS 123982 (D.R.I. Dec. 29, 2009) .................. *passim*

*In re Millennium Lab Holdings II, LLC*,
591 B.R. 559 (D. Del. 2018)....................18

*In re Montreal Maine & Atl. Ry., Ltd.*,
No. 1:13-MC-00184-NT, 2014 WL 1155419 (D. Me. Mar. 21, 2014) .......................... *passim*

*In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*,
496 B.R. 256 (D. Mass. 2013) .................... *passim*

*New England Wood Pellet, LLC v. New England Pellet, LLC*,
419 B.R. 133 (D.N.H. 2009)....................13

*New Horizon of NY LLC v. Jacobs*,
231 F.3d 143 (4th Cir. 2000) ....................17

*Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*,
865 F.3d 181 (4th Cir. 2017) ....................15

*In re Nutraquest, Inc.*,
No. 03-5869 (GEB), 2004 U.S. Dist. LEXIS 29143 (D.N.J. Mar. 5, 2004).................... *passim*

*In re Pacor, Inc.*,
72 B.R. 927 (Bankr. E.D. Pa. 1987) ....................12, 13

*Pacor, Inc. v. Higgins*,
743 F.2d 984 (3d Cir. 1984).................... *passim*

*In re Pan Am. Corp.*,
950 F.2d 839 (2d Cir. 1991)....................27, 29, 30

*Plowman v. Bedford Fin. Corp.*,
218 B.R. 607 (Bankr. N.D. Ala. 1998) ....................11, 12

*Resolution Tr. Corp. v. Bayside Developers*,
43 F.3d 1230 (9th Cir. 1994) ....................15

*In re Riverside Nursing Home*,
144 B.R. 951 (S.D.N.Y 1992)....................28

*Estate of Scott v. Cervantes*,
No. CV 08-03293 MMM, 2008 U.S. Dist. LEXIS 129198 (C.D. Cal. July 29, 2008) ....................13

*Skylark v. Honeywell Int'l, Inc.*,
No. 01-5069-CIV, 2002 WL 32101980 (S.D. Fla. Jan. 25, 2002) ....................17, 21

*Textron Investment Mgmt. Co. v. Struthers Thermo-Flood Corp.*,
169 B.R. 206 (D. Kan. 1994) ....................11

*Things Remembered, Inc. v. Petrarca*,
516 U.S. 124 (1995) ....................13

*In re Twin Labs.*,
300 B.R. 836 (S.D.N.Y. 2003) .................... *passim*

*In re W.R. Grace & Co.*,
591 F.3d 164 (3d Cir. 2009) ....................17, 21

*In re W.R. Grace & Co.*,
315 B.R. 353 (Bankr. D. Del. 2004) ....................23

*In re W.R. Grace & Co.*,
386 B.R. 17 (Bankr. D. Del. 2008) .................... *passim*

*Whittingham v. CLC of Laurel, LLC*,
No. 2:06cv11-KS-MTP, 2006 WL 2423104 (S.D. Miss. Aug. 22, 2006) ....................9, 14

*Williams v. Shell Oil Co.*,
169 B.R. 684 (S.D. Cal. 1994) ....................28

*In re WorldCom, Inc. Sec. Litig.*,
293 B.R. 308 (S.D.N.Y. 2003) ....................10, 27

**Statutes**

11 U.S.C. § 301 ........ 8

11 U.S.C. § 362 ........ 5, 15

11 U.S.C. § 1101 ........ 7

11 U.S.C. § 1107 ........ 7

11 U.S.C. § 1108 ........ 7

28 U.S.C. § 157 ........ *passim*

28 U.S.C. § 1334 ........ *passim*

28 U.S.C. § 1441 ........ *passim*

28 U.S.C. § 1446 ........ *passim*

28 U.S.C. §1452 ........ *passim*

**Other Authorities**

Del. Bankr. L.R. 9006–2. ........ 8

Fed. R. Bankr. P. 9027 ........ *passim*

2 Collier on Bankruptcy (Lawrence P. King et al. eds., 15th ed. rev. 1996) ........ 28

This Court should defer ruling on Plaintiffs' Motion for Remand (the "Remand Motion") until the Delaware District Court issues its ruling on the pending Venue Motion, which is now fully briefed. In the alternative, the Remand Motion should be denied because Johnson & Johnson ("J&J") properly and timely removed this action under Rule 9027 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and the relevant bankruptcy statutes, 28 U.S.C. §§ 1334 and 1452. And under the controlling bankruptcy statutory framework, 28 U.S.C. §§ 157(b)(5) and 1334(b), the United States District Court for the District of Delaware ("District of Delaware" or "Delaware District Court") has the sole authority to ultimately fix venue in this action and decide whether it, and claims against J&J asserted in approximately 2,400 similar actions that were or will be removed to district courts across the country, should be centrally administered in Delaware as "related to" the chapter 11 cases of J&J's sole talc supplier Imerys Talc America, Inc. and two affiliates, Imerys Talc Vermont, Inc., and Imerys Talc Canada, Inc. (collectively, the "Debtors").

## INTRODUCTION

Historically, the Debtors have been J&J's sole supplier of the cosmetic talc used in its iconic baby powder products. Prior to removal, this action was one of thousands proceeding in state courts across the country in which plaintiffs allege that exposure to talc supplied by the Debtors and used in J&J's baby powder products caused the plaintiffs' injuries (the "State Court Talc Claims").[1] Beset by an avalanche of personal injury lawsuits, including approximately 90% of the very same State Talc Claims also pending against J&J, the Debtors sought chapter 11

[1] The State Court Talc Claims are brought in roughly 2,400 actions, involving approximately 1,400 ovarian cancer actions and 980 non-ovarian cancer actions (predominately mesothelioma-related injuries). The State Court Talc Claims exclude, in the interest of judicial economy, claims on appeal of final judgments or subject to post-trial motions, as well as those in which a trial is ongoing. Notably, in ten of the thirteen cases tried over the last year, plaintiffs have failed to convince juries of the merits of their claims, resulting in five defense verdicts and findings of no asbestos in J&J's talcum powder, five hung juries or mistrials, and three plaintiff verdicts.

protection in the United States Bankruptcy Court for the District of Delaware (the "Chapter 11 Case"). In light of Debtors' bankruptcy, and given the Debtors' claims to J&J's insurance and indemnification from J&J, as well as J&J's contractual rights to unlimited indemnity from and shared insurance with the Debtors, a centralized venue for adjudication of the State Court Talc Claims has become necessary to best serve all of the Debtors' creditors, including personal injury plaintiffs like Plaintiffs here, as well as J&J.

Courts have long recognized the benefits of using 28 U.S.C. § 157(b)(5) to aggregate nationwide claims—both federal and state, against debtors and non-debtors alike—into one, centralized forum.[2] On April 18, 2019, J&J filed its Venue Motion in the District of Delaware, *see* Dkt. No. 1-3, Ex. C (Part 1), and as of May 23, 2019, the Venue Motion was fully briefed, *see* Dkt. Nos. 63-1 and 81.[3] As set forth in the Venue Motion, 28 U.S.C. § 157(b)(5) vests the Delaware District Court with sole authority to set venue for the State Court Talc Claims. Under 28 U.S.C. § 1334(b), there exists federal subject matter jurisdiction over all personal injury and wrongful death claims that are "related to" the Debtors' estates.

While the Remand Motion fails on the merits, this Court need not issue a merits ruling at this time. The District of Delaware has the sole authority to fix venue in this action. Should that

---

[2] *See, e.g.*, *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) (affirming transfer and centralization of thousands of state and federal personal injury cases against debtors and non-debtor co-defendants); *In re Montreal Maine & Atl. Ry., Ltd.*, No. 1:13-MC-00184-NT, 2014 WL 1155419, at *5, *9–10, *12 (D. Me. Mar. 21, 2014) (transferring product liability claims against non-debtors under § 157(b)(5), finding "related to" jurisdiction based on shared insurance with and "an unconditional right to indemnification from" debtor); *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 496 B.R. 256, 264–65 (D. Mass. 2013) (transferring and aggregating cases, including against non-debtors, in a single forum, under § 157(b)(5), in the interests of judicial efficiency and the fair and efficient distribution of the debtors' estate); *In re Nutraquest, Inc.*, No. 03-5869 (GEB), 2004 U.S. Dist. LEXIS 29143, at *42–43 (D.N.J. Mar. 5, 2004) (denying motion to remand and finding "related to" jurisdiction over transferred claims against non-debtors, citing the "strong legislative presumption in favor of transfer under §157(b)(5)") (quoting *In re Twin Labs., Inc.*, 300 B.R. 836, 841 (S.D.N.Y. 2003)).

[3] The Delaware District Court subsequently permitted limited supplemental briefing, which will be completed by June 4, 2019. *See* Oral Order, *In re Imerys Talc America, Inc.*, Case No. 19-mc-00103 (MN) (D. Del. May 28, 2019), Dkt. No. 84.

court grant J&J's Venue Motion, which is now fully briefed before that court, venue for this action will be fixed in Delaware; the case will be transferred there, mooting the Remand Motion. In the interest of judicial economy and comity, this Court should hold the Remand Motion in abeyance until the Delaware District Court exercises its sole authority and rules on the Venue Motion. Appreciating this point, Chief Judge Colleen McMahon, with the consent of other Southern District of New York judges, *sua sponte* ordered a stay of all State Court Talc Claims removed to the Southern District of New York. *See* Dkt. No. 9, Order, *In re Various Removed State Court Actions Against, Inter Alia, Johnson & Johnson* ("*State Court Talc Actions*"), No. 1:19-cv-03530-JGK (S.D.N.Y. April 30, 2019) (finding it "in the interest of justice for this court to await rulings from the District of Delaware and/or from the Multi-District Panel prior to undertaking any substantive work in connection with any of these removed State Court Talc Actions").[4] Similarly, in the Eastern District of Pennsylvania, after full briefing from both plaintiffs and J&J, Judge R. Barclay Surrick ordered a case to be held in abeyance, pending the District of Delaware's venue ruling. *See* **Exhibit B**, Order, *Moore v. Rite Aid Corp.*, 19-cv-1698-RBS (E.D. Pa. May 22, 2019) (finding that "it would not be inequitable to hold this case in abeyance").[5]

---

[4] In four of the cases subject to Chief Judge McMahon's order, the plaintiffs had announced that the case was trial ready. Of those four, two were set to begin trial before the Plaintiffs' trial date, anticipated in Fall of 2019. In the cases that were stayed in the Southern District of New York, Chief Judge McMahon has since lifted the stay solely with respect to briefing plaintiff's remand motions and has indicated a decision would issue during the week of June 3, 2019. *See, e.g.*, **Exhibit A**, Memo Endorsement, *McCarthy v. Johnson & Johnson*, 1:19-cv-03663-UA, (S.D.N.Y. May 17, 2019).

[5] Other judges in other courts have also decided to await a decision from the Delaware District Court before issuing their own rulings on plaintiffs' remand motions. With reference to Chief Judge McMahon's order, on May 3, 2019, Magistrate Judge A. Kathleen Tomlinson *sua sponte* issued a stay of six months in a removed talc action pending in the Eastern District of New York. *See* **Exhibit C**, Order, *Mustapick v. A.W. Chesterton, Inc.*, 2:19-cv-02305-JMA-AKT (E.D.N.Y. May 3, 2019) (text order on docket). Similarly, on May 14, 2019, Judge Joanna Seybert *sua sponte* stayed an Eastern District of New York case "until further order from this Court." *See* **Exhibit D**, Order, *Gavin v. AGCO Corp. et al*, 2:19-cv-02303-JS-SIL (E.D.N.Y. May 14, 2019) (text order on docket). Judge Aaron Polster has also stayed two cases in the Northern District of Ohio. *See* **Exhibits E, F**, *Berry v. Clark Indus. Insulation Co.*, 1:19-cv-00890-DAP (N.D. Ohio, May 6, 2019) (text order on docket); Order, *Reardon v. Colgate-Palmolive Co.*, 1:19-cv-00892-DAP (N.D. Ohio May 6, 2019) (text order on docket). After plaintiffs in a District of Massachusetts case filed a motion to remand and J&J filed its opposition, Magistrate Judge M. Page Kelley entered a docket order staying all

In any event, the State Court Talc Claims, including Plaintiffs' claims in this action, are "related to" the Debtors' Chapter 11 Case because supply agreements between the Debtors and J&J contain contractual indemnifications, including indemnifications in favor of J&J, triggered upon the filing of these personal injury claims without regard to ultimate findings on liability. The State Court Talc Claims, including Plaintiffs', are also "related to" the Debtors' Chapter 11 Case because Debtors have claimed rights to approximately **two billion dollars** of J&J's insurance for expenses incurred in defending against the thousands of talc-related lawsuits. *See* Dkt. No. 1-9, Ex. C (Part 7), Nolan Decl., Ex. 1 (First Day Declaration) ¶ 42. These contractual indemnification claims and claims on shared insurance stand to impact the pool of assets available for Debtors' creditors. Moreover, courts have recognized identity of interest in sale of a single product as additional grounds for "related to" jurisdiction.[6]

The Debtors are also the proper party in interest because they are the sole supplier of the talc at issue. Here, the Debtors exclusively supplied the talc in the talcum powder products sold by J&J. Plaintiffs' allegations in this litigation are that the talc supplied by the Debtors and sold by J&J was the cause of their injury. Thus, each State Court Talc Claim plaintiff, including the Plaintiffs in this case, draws a straight line from the J&J talcum powder products at issue to the

action in the case pending the District of Delaware ruling. *See* **Exhibit G**, *Goodnow et al. v. Johnson & Johnson et al.*, 1:19-cv-10761-MPK (D. Mass. May 15, 2019) (text order on docket). While several remand orders have also issued from federal courts since April 29, 2019, they have been largely without in-depth analysis of jurisdictional considerations. The majority also rely primarily on equitable considerations that J&J submits are outweighed by equitable treatment to Debtors' creditors, efficient administration of the Debtors' estates, and preservation of judicial resources. The inconsistent outcomes among the removed claims by federal courts only underscore the need for a stay of consideration of the Remand Motion in deference to the Delaware District Court.

[6] *See, e.g.*, *A.H. Robins*, 788 F.2d at 999; *In re Dow Corning Corp.*, 86 F.3d 482, 493–94 & n.11 (6th Cir. 1996); Dkt. No. 1-11, Ex. C (Part 9), Nolan Decl., Ex. 14 (TKH Hr'g Tr.) at 16:17–25.

Debtors' talc. Indeed, the fact that Debtor Imerys Talc America, Inc. has been named as a co-defendant in approximately 90% of the talc-related actions against J&J is a testament to this.[7]

In coordination with the filing of the Venue Motion, this action was properly and timely removed under Bankruptcy Rule 9027 and 28 U.S.C. §§ 1334 and 1452. Bankruptcy Rule 9027, which provides 90 days to remove, is specifically applicable to bankruptcy-related removals under § 1452, and thus controls here. Plaintiffs' reliance on the 30-day removal statute, 28 U.S.C. § 1446(b), Plaintiffs' Memorandum ("Pls. Mem.") at 4–5, applicable to the general removal statue, 28 U.S.C. § 1441, is, therefore, misplaced.

Nor has J&J waived its right to remove this action by complying with the state court's pre-trial orders or other pre-trial procedures. Because the automatic stay does not relieve J&J of its obligations to defend itself in state court, 11 U.S.C. § 362(a)(1), J&J continued to meet its obligations until filing its Notice of Removal. Furthermore, waiver is only appropriate in extreme situations, such as when a removing party has sought affirmative relief in state court by filing a counter-claim, or triggered the grounds for removal itself in an attempt to forum shop. J&J's compliance with the state court's orders and procedures cannot constitute a waiver.

With jurisdiction firmly established (and more properly decided by the Delaware District Court), and because mandatory abstention is inapplicable under these circumstances, the only basis to remand this action would be equitable grounds under 28 U.S.C. § 1452(b). Here, these equitable considerations overwhelmingly favor denying the Remand Motion. Remand of this action, like

[7] "Related to" jurisdiction does not require that a debtor be a co-defendant. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, *the proceeding need not necessarily be against the debtor or against the debtor's property*.") (emphasis added). This is especially the case where a contractual indemnity and/or shared insurance supports jurisdiction. *See, e.g.*, *W.R. Grace & Co.*, 386 B.R. 17, 23-30 & n.33 (Bankr. D. Del. 2008); *In re Montreal Maine*, 2014 WL 1155419, at *1, *10–12.

remand of the State Court Talc Claims generally, would only perpetuate the inefficiencies and inconsistencies that J&J's Venue Motion seeks to avoid. These inefficiencies favor removal particularly because the Delaware District Court has authority to effectuate transfer of any State Court Talc Claims removed in connection with the Venue Motion, even if those cases have already been remanded to state court by the time the Venue Motion is decided. *See, e.g.*, *In re Imerys Talc America, Inc.*, Case No. 19-mc-00103 (MN) (D. Del. May 9, 2019), Dkt. No. 34, Mem. Op. 6 ("[T]he Court may consider the transfer of the cases under § 157(b) regardless of the decisions reached by the state courts on transfer and remand issues . . . ."); Dkt. No. 1-11, Ex. C (Part 9), Nolan Decl., Ex. 15 (*Hopkins v. Plant Insulation Co.*, No. 06-cv-298-JJF (D. Del. May 22, 2006)), Mem. Order 3 (noting that "the Court may consider the transfer of this case under Section 157(b) regardless of the decisions reached by the California court on the transfer and remand issues").

And in any event, Plaintiffs are not alone in wanting a prompt disposition of their claim. There are thousands of plaintiffs around the country seeking their day in court—nearly all of them diagnosed with cancer and many of them with a poor medical prognosis. Plaintiffs' counsel knows this well, as they represent many other plaintiffs without state court trial dates because of the thousands of cases currently burdening the state court system. Transferring all of the State Court Talc Claims to the District of Delaware affords plaintiffs collectively—not just those with a current trial date—the best chance for an efficient adjudication of their claims. The District of Delaware, under the bankruptcy venue statute invoked here, has more resources at its disposal to facilitate this adjudication, such as by holding a single general causation hearing relating to all the State Court Talc Claims, setting bellwether trials representative of all State Court Talc Claims, and remanding cases to federal venues around the country for expedited trials if appropriate. Indeed,

J&J's Venue Motion stands to benefit all of Debtors' mass tort creditors who are equally desirous of their day in court.[8]

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On February 13, 2019, the Debtors filed voluntary chapter 11 petitions, which are being jointly administered in the reorganization proceedings styled: *In re: Imerys Talc America, Inc., et al.*, Case No. 19-10289-LSS, in the United States Bankruptcy Court for the District of Delaware.[9]

On April 18, 2019, J&J filed its Venue Motion in the District of Delaware. *See In re Imerys Talc America, Inc.*, Case No. 19-mc-00103 (MN), Dkt. No. 1 (D. Del.). The Venue Motion and supporting papers were submitted to this Court with J&J's Notice of Removal. *See* Dkt. No. 1. As of May 23, 2019, the Venue Motion was fully briefed and pending before the Delaware District Court. *See In re Imerys Talc America, Inc.*, Case No. 19-mc-00103 (MN) (D. Del. May 9, 2019), Dkt. Nos. 63-1, 80. The primary purpose of the Venue Motion is to centralize approximately 2,400 claims against J&J—all of which allege that the Debtors' talc caused personal injury and/or wrongful death—in one forum, i.e., the Delaware District Court. *See id.*

[8] *Cf., e.g.*, *W.R. Grace & Co.*, 386 B.R. at 35–36 (expanding a preliminary injunction to bar prosecution of pending actions against non-debtor railroad over whom the court found "related to" jurisdiction, and weighing the alleged hardship to "sick and dying" claimants caused by expanding the injunction, but finding that "]t]he diversion of time, effort and resources that would be required if the [actions] proceed would further delay the reorganization process, and implicate estate property," and noting that the parties were permitted to pursue testimony preservation procedures upon application). Additionally, since filing its Venue Motion, J&J has met all pre-trial deadlines, even where Plaintiffs in this case have not done the same. Moreover, if one accepted Plaintiffs' argument that the particular facts of their case warranted remand rather than removal and transfer to one efficient forum subject to § 157(b)(5), it would follow that multidistrict litigation of such claims is improper for the same reason. Yet over 80 percent of the talc cases against J&J have already been efficiently consolidated in an MDL. *See* Case No. 3:16-md-02738 (D.N.J.). By establishing this MDL, the federal courts have effectively rejected the argument that plaintiff-specific circumstances require thousands of cases to be decided separately, and potentially inconsistently. This consideration should not override the purposes of § 157(b)(5) and the orderly and efficient operation of the courts.

[9] Since the Chapter 11 Case was commenced, the Debtors have remained as debtors in possession under 11 U.S.C. § 1101 and have the rights, powers, and duties set out in 11 U.S.C. §§ 1107 and 1108.

Under Bankruptcy Rule 9027(a)(2), the deadline to remove prepetition claims related to the Debtors' bankruptcy estates is "90 days after the order for relief under the Code." Fed. R. Bankr. P. 9027(a)(2); 28 U.S.C. § 1452(a). Therefore, under the Rule, the removal deadline was May 14, 2019. *See* 11 U.S.C. § 301(b) ("The commencement of a voluntary case . . . constitutes an order for relief under such chapter.").[10] On April 18, 2019—nearly a month before the removal deadline, J&J filed a notice of removal in this Court. *See* Dkt. No. 1 (the "Notice of Removal"). In accordance with Bankruptcy Rule 9027(b), J&J promptly served written notice of the removal on Plaintiffs' counsel of record. On April 19, 2019, consistent with Bankruptcy Rule 9027(c), J&J filed a copy of the Notice of Removal with the clerk of the Rhode Island Superior Court (the "State Court") from which this case was removed. *See* Dkt. No. 8. As of that filing, "[t]he parties shall proceed no further in that court unless and until the claim or cause of action is remanded." Fed. R. Bankr. P. 9027(c).

On April 24, 2019, Plaintiffs filed a two-page Motion to Remand Removed Action to State Court. *See* Dkt. No. 4.

On April 30, 2019, J&J filed in the District of Delaware an Emergency Motion for Provisional Transfer under 28 U.S.C. § 157(b)(5). *See In re Imerys Talc America, Inc.*, Dkt. No. 12. The Delaware District Court denied that motion on May 9, 2019, finding emergency transfer unnecessary because briefing on the Venue Motion would be complete on May 23, 2019 and a decision on the merits would issue in due course. *See id.* Dkt. No. 34 at 6. On May 10, 2019,

[10] On May 3, 2019, J&J filed a Motion for Order Under 28 U.S.C. § 1452 and Fed. R. Bankr. P. 9006(b) and 9027 Extending the Deadline to File Notices of Removal of Related Civil Actions in the Debtors' Chapter 11 Case. *See In re Imerys Talc America, Inc.*, Case No. 19-10289 (LSS) (Bankr. D. Del.) [D.I. 486]. Under Rule 9006-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware, "if a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Code, the Fed. R. Bankr. P., these Local Rules or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order." The Bankruptcy Court has not yet ruled on J&J's motion; therefore, the removal deadline has been extended, pending a ruling on J&J's motion.

Plaintiffs filed another Motion to Remand with a corresponding memorandum of law. Dkt. No. 11.

## ARGUMENT

### I. This Court Should Hold the Remand Motion in Abeyance Until After the Delaware District Court Decides the Venue Motion

This Court need not expend judicial resources deciding the Remand Motion while the Venue Motion is pending before the Delaware District Court. A speedy decision from the District of Delaware granting the Venue Motion, which is already fully briefed, would fix venue for the State Court Talc Claims in Delaware, effectively transferring this action to the District of Delaware.

28 U.S.C. § 157(b)(5) instructs "that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, *as determined by the district court in which the bankruptcy case is pending*." (emphasis added). In cases involving transfer and remand motions, courts have held that the "*transferee*" court under section 157(b)(5) is the proper forum to decide the remand motion. *See, e.g., Whittingham v. CLC of Laurel, LLC*, No. 2:06cv11-KS-MTP, 2006 WL 2423104, at *1 (S.D. Miss. Aug. 22, 2006) ("Plaintiff has filed a Motion for Remand and Request for this Court to abstain. This issue needs to be considered as a part of the big picture. The District Court in Georgia [with jurisdiction over the bankruptcy] should consider this issue."); *Calumet Nat'l Bank v. Levine*, 179 B.R. 117, 123 (N.D. Ind. 1995) (staying all proceedings while debtor-defendant pursued section 157(b)(5) motion and deferring ruling on pending motions because "whichever court ultimately takes the case should be the one that rules on the remaining argument"); *cf. Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. Apr. 3, 2001) (holding that transferee court in multidistrict litigation

is "a proper authority to decide the remand motion" and "[t]he general rule is for federal courts to defer ruling on pending motions to remand in [multidistrict litigation]" until after the case is transferred). Deference to the district in which the bankruptcy is administered is consistent with the language and purpose of section 157(b)(5). *See Calumet*, 179 B.R. at 121 ("[A] purpose behind section 157(b)(5) is making it possible for a single forum to oversee the many claims and proceedings that might arise in or affect a bankruptcy case.").

Should the Delaware District Court find that it has jurisdiction, remand will be inappropriate unless *that* court chooses, against a "strong legislative presumption in favor of transfer," to abstain following abstention analyses. *In re Nutraquest, Inc.*, No. 03-6859 (GEB), 2004 U.S. Dist. LEXIS 29143, at *43 (D.N.J. Mar. 5, 2004) (quoting *In re Twin Labs.*, 300 B.R. 836, 841 (S.D.N.Y. 2003)). Accordingly, it is the Delaware District Court rather than this Court that should engage in any abstention analyses or otherwise consider remand issues in the first instance.[11] For this reason, courts routinely defer ruling on motions to remand until after the court vested with the authority to fix venue under section 157(b)(5), here the District of Delaware, decides whether the case would be transferred. *See, e.g.*, *A.A. v. Soc'y of Jesus*, No. C09-00262 MJP, 2009 WL 10676663, at *2 (W.D. Wash. May 7, 2009) (declining to rule on motion to remand challenging "related to" jurisdiction "[i]n order to give due comity and deference to the [Bankruptcy Court for the District of Oregon before which a § 157(b)(5) motion was pending] in handling [a debtor's] bankruptcy"); *Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 808 n.2 (N.D. Cal. 2006) (granting remand motion *after* decision was issued by district court where bankruptcy was pending on whether to fix venue in central location).

---

[11] As acknowledged by Plaintiffs, Pls. Mem. at 13, the permissive abstention analysis under 1334(c)(1) is essentially identical to equitable remand analysis under section 1452(b). *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 334 (S.D.N.Y. 2003). Accordingly, the same equitable considerations that overwhelmingly support denial of the Remand Motion under section 1452(b), also disfavor permissive abstention under section 1334(c)(1).

Further to this point, under § 157(b)(5), the Delaware District Court may fix venue for this action, even if it has already been remanded. *See In re Imerys Talc America, Inc.*, Case No. 19-mc-00103 (MN) (D. Del. May 9, 2019), Dkt. No. 34, Mem. Op. 6 ("[T]he Court may consider the transfer of the cases under § 157(b) regardless of the decisions reached by the state courts on transfer and remand issues . . . ."); Dkt. No. 1-11, Ex. C (Part 9), Nolan Decl., Ex. 15 (*Hopkins v. Plant Insulation Co.*, No. 06-cv-298-JJF (D. Del. May 22, 2006)), Mem. Order 3 (noting that "the Court may consider the transfer of this case under Section 157(b) regardless of the decisions reached by the California court on the transfer and remand issues"); *see also A.H. Robins*, 788 F.2d at 998 (affirming district judge's order transferring claims, *wherever pending*, to a single forum) (emphasis added); *In re Dow Corning Corp.*, 86 F.3d at 493 (citing with approval the order entered in *A.H. Robins*). Thus, in the interests of comity, efficiency, and achieving uniform outcomes by coordinated judicial proceedings, this Court should await the District of Delaware's forthcoming decision on the Venue Motion, which has been fully briefed before that court, before issuing a ruling on the Remand Motion.

## II. J&J Timely and Properly Removed This Action Under Bankruptcy Rule 9027, 28 U.S.C. § 1452, and Applicable Local Rules

Plaintiffs' claims against J&J are "related to" the Chapter 11 Case, and thus removed under 28 U.S.C. § 1452. As the majority of courts have held, "the time limits stated in Bankruptcy Rule 9027 should control with regard to Section 1452." *GSL of Ill, LLC v. Pitt Penn Oil Co., LLC*, No. 09cv0571, 2009 U.S. Dist. LEXIS 51428, at *4 (W.D. Pa. June 17, 2009); *see also In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 756 (D.N.J. 1996) ("The majority of courts have upheld the applicability of Bankruptcy Rule 9027 to Section 1452 and enforce a ninety day time limitation.") (citing *Textron Investment Mgmt. Co. v. Struthers Thermo-Flood Corp.*, 169 B.R. 206, 210 (D. Kan. 1994); *Plowman v. Bedford Fin. Corp.*, 218 B.R. 607, 613 n.13 (Bankr.

N.D. Ala. 1998) ("The majority position is it is Fed. R. Bankr. P. 9027 [that controls]."); *In re Klober*, 142 B.R. 300, 301 (Bankr. E.D. Ark. 1992); *In re Pacor, Inc.*, 72 B.R. 927, 930-31 (Bankr. E.D. Pa. 1987). The majority rationale is based upon the view that "Rule 9027 was *not* so tied to the former removal statute, § 1478, that the repeal of § 1478, and the subsequent enactment of § 1452, caused the implicit repeal of Rule 9027." *Donington,* 194 B.R. at 756 (quoting *In re Aztec Indus., Inc.*, 84 Bankr. 464, 469 (Bankr. N.D. Ohio 1987)). In other words, the deadlines set forth by Bankruptcy Rule 9027 remain in effect and control here.

To elaborate on this issue, the court in *In re Pacor, Inc.*, 72 B.R. 927, 930–31 (Bankr. E.D. Pa. 1987), succinctly stated:

> When Congress enacted 28 U.S.C. § 1452, its intent was simply to alter the statutory reference from bankruptcy court to district court. S. Rep. No. 98-55, 98th Cong., 1st Sess. 43 (1983). It expressed no desire to alter the procedure or time periods set out in Rule 9027 which were then in effect. Indeed, the proposed amendments to Bankr. Rule 9027 maintain the time limits currently existing in this rule and alter the procedure by having the removed application filed with the district court clerk. Moreover, since § 1446 makes no provision for removal by a plaintiff, while § 1452 continues to allow plaintiffs to remove, it is difficult to see how Rule 9027 could be supplanted by § 1446 unless one also supplants § 1452 by § 1441.

Thus, Plaintiffs erroneously rely on 28 U.S.C. § 1446, which outlines procedure under the general removal statute, 28 U.S.C. § 1441, to suggest J&J's removal of this action was untimely. Pls. Mem. at 4. Plaintiffs claim that "[t]he 30-day requirement [of § 1446] applies to the removal of claims related to bankruptcy cases under § 1452." Pls. Mem. at 4. Plaintiffs' assertion finds no support in the leading case law. In rejecting the minority view proposed by Plaintiffs, the court in *Pacor* observed that courts following the minority view "simply neglect[] to take into account the significant differences between removal under § 1452 and § 1441" as well as "the bankruptcy

policies implicit in those differences." *In re Pacor, Inc.*, 72 B.R. at 931.[12] Specifically, to effectuate those policies, "Congress intended to allow the rule making process to establish the removal procedure for bankruptcy related proceedings from other courts." *Id.; see also id.* at 930 ("The removal procedures and time deadlines established by this rule are different from those set out in 28 U.S.C. §§ 1441, 1446 because of *unique concerns and policies* embodied in the Bankruptcy Code.") (emphasis added) (citing the Advisory Committee Notes to Bankruptcy Rule 9027).

Courts in the First Circuit agree. *See, e.g.*, *Haber v. Massey*, 904 F. Supp. 2d 136 at *140 (D. Mass. 2012) ("[S]ection 1452, the bankruptcy removal statute, does not impose a thirty-day time limit on removal; rather, courts have determined that a number of different deadlines govern such removal as set forth in Rule 9027 of the Federal Rules of Bankruptcy Procedure."); *New England Wood Pellet, LLC v. New England Pellet, LLC*, 419 B.R. 133 at *146 (D.N.H. 2009) ("§1452 does not impose a thirty-day time limitation on removal, but a number of different deadlines imposed by Rule 9027 of the Federal Rules of Bankruptcy Procedure."). In recognition of the unique concerns and policies underlying the Bankruptcy Code—protecting the Debtors' estates and creditors rights—this Court should likewise adopt the majority rule.[13] Adopting the

---

[12] "Congress, when it added § 1452 to the Judicial Code chapter on removal of cases from state courts—a chapter now comprising 28 U.S.C. §§ 1441–1452—meant to *enlarge*, not rein in, federal trial court removal/remand authority for claims related to bankruptcy cases." *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 131–32 (1995) (Ginsburg, J. concurring) (emphasis added). Notably, although cited by the Plaintiffs, *Things Remembered* does not address the interaction between the timelines set forth in Bankruptcy Rule 9027 and 28 U.S.C. § 1446.

[13] The cases the Plaintiffs cite to the contrary do not alter this analysis. *See* Pls. Mem. at 4. For example, *Estate of Scott v. Cervantes*, No. CV 08-03293 MMM (CWx), 2008 U.S. Dist. LEXIS 129198, at *4 (C.D. Cal. July 29, 2008), blindly crops language—"By its plain language, the 30-day requirement of § 1446(b) applies to cases removed under § 1452"—from *Davis v. Ocwen Fed. Bank*, No. 3:05cv1229-MHT (WO), 2006 U.S. Dist. LEXIS 3221, at *15 (M.D. Ala. Jan. 19, 2006). But the *Davis* court cited neither statute nor case law in making that proclamation. Nor did the court even consider—anywhere in its opinion—Bankruptcy Rule 9027. *Bank of America NA v. Koola*, 2:16-1634-RMG, 2016 U.S. Dist. LEXIS 169165 (D.S.C. Dec. 28, 2016), did not address whether the 30 day timeline under § 1446(b) superseded Bankruptcy Rule 9027. Rather, *Koola* properly applied § 1446(b) to removal based on federal question and diversity jurisdiction. *Koola*, 2016 U.S. Dist. LEXIS 169165, at *5–8. Removal through § 1334 was improper because the action was "not related to any bankruptcy proceeding"—not because the motion was untimely. *Id.* at *8. Finally, *In re Asbestos Litig.*, CV No:01-1790-PA, 2002 U.S. Dist. LEXIS 3083, at *9 (D. Or. Feb. 1, 2002), bases its conclusion on a perceived conflict between 28 U.S.C. § 1446 and Bankruptcy Rule 9027, without grappling with the reasons underlying the distinction. *See id.* at *8.

minority view, on the other hand, would contravene standard bankruptcy practice. *Cf., e.g., In re Imerys Talc America, Inc.*, No. 19-10289 (LSS), Dkt. No. 93 (Bankr. D. Del.) (moving under Bankruptcy Rule 9027 to extend the removal deadline without reference to 28 U.S.C. § 1446).

In any event, courts faced with similar procedural postures have held that the transferee court—here, the District of Delaware—should decide motions to remand. *See Whittingham*, 2006 WL 2423104, at *1 ("Plaintiff has filed a Motion for Remand and Request for this Court to abstain. This issue needs to be considered as a part of the big picture. The District Court in Georgia [with jurisdiction over the bankruptcy] should consider this issue."); *cf. Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. April 3, 2001) (holding that transferee court in multidistrict litigation is "a proper authority to decide the remand motion" and "[t]he general rule is for federal courts to defer ruling on pending motions to remand in [multidistrict litigation]" until after the case is transferred). Thus, to the extent that the law within the First Circuit and the Third Circuit diverges as it relates to the timeliness of J&J's Notice of Removal, which it does not, the law within the Third Circuit should govern.

J&J's defense of itself in state court prior to removal cannot constitute a waiver of its right to removal. Waiver is only appropriate where there is "clear and unequivocal" intent to litigate in state court and abandon the right to a federal forum. *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 790 (9th Cir. 2018). In light of this standard, "when a party takes necessary defensive action to avoid a judgment being entered automatically against him, such action does not manifest an intent to litigate in state court, and accordingly does not waive the right to remove." *Id.; see also Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1217 n.15 (3d Cir. 1991) ("In the context of litigation-based waiver, the 'clear and unequivocal' standard makes sense. Otherwise, in order not to waive the right to remove defendants would have to remain inactive in the state court, running the peril

of being held in default should a remand from the district court later occur."). Thus, "[i]n general, 'the right of removal is not lost by action in the state court short of proceeding to an adjudication on the merits.'" *Resolution Tr. Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994) (citing *Beighley v. FDIC*, 868 F.2d 776, 782 (5th Cir. 1989)). Here, J&J could not seek relief from its state court obligations under the automatic stay, *see* 11 U.S.C. § 362(a)(1), and so continued to meet those obligations until J&J's own filing of its Notice of Removal. In timing its decision, J&J sought to balance the 90 days afforded to it by Bankruptcy Rule 9027 with the need for an expeditious adjudication of the numerous State Court Talc Claims, including Plaintiffs'.[14]

## III. <u>This Court has Subject Matter Jurisdiction as "Related To" Debtors' Chapter 11 Case under 28 U.S.C. § 1334(b)</u>

As more fully outlined in J&J's Venue Motion,[15] federal district courts have "related to" jurisdiction over Plaintiffs' personal injury claims against J&J, and all of the State Court Talc Claims, under 28 U.S.C. § 1334(b). Plaintiffs' arguments to the contrary find no support in the facts or in the law. Plaintiffs rely heavily on *Federal-Mogul* to support their argument that "related to" jurisdiction does not exist here because "the indemnification right must 'accrue upon the filing of the civil action in the proceeding related to the bankruptcy case' and be 'clearly established.'" Pls. Mem. at 7 (quoting *In re Fed.-Mogul Glob., Inc.*, 300 F.3d 368, 372, 382 (3d Cir. 2002).[16] *Federal-Mogul* is <u>not this case</u>.

---

[14] The single case cited by Plaintiffs similarly shows that J&J's pre-trial actions cannot constitute a waiver. In that case, *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 865 F.3d 181 (4th Cir. 2017), the Fourth Circuit concluded that removal was proper only in "extreme situations," such as when, as in that case, the removing party triggered the very grounds for removal in an attempt to forum-shop. *See id.* at 186, 188. Here, the grounds for removal (as well as the choice of forum) were triggered by the Debtors.

[15] In the interest of economy, J&J respectfully refers the Court to the Statement of Facts and Argument Section II of its Venue Motion for necessary background and preliminary argument on federal courts' jurisdiction over this action.

[16] Plaintiffs purport to quote *Federal Mogul* but actually appear to be quoting, with some error, *In re Lower Bucks Hosp.*, 488 B.R. 303, 314 (E.D. Pa. 2013), aff'd, 571 F. App'x 139 (3d Cir. 2014).

*Federal-Mogul* involved personal injury and wrongful death asbestos claims brought by tens of thousands of plaintiffs "against various manufacturers and distributors of friction products . . . as well as against companies that made and sold products that incorporated friction products" in their own products. *Id.* at 372. There, eleven movants, primarily automobile manufacturers, sought to remove their cases from state court to the Debtors' bankruptcy proceeding. *In re Fed.-Mogul Glob., Inc.*, 282 B.R. 301, 303 (Bankr. D. Del. 2002). But in asking the related district court to take jurisdiction, the movants "produced no evidence whatsoever of even a bare agreement to indemnify running between the debtors and the solvent co-defendants . . . ." *Fed.-Mogul Glob.*, 300 F.3d at 376 (quoting *In re Fed.-Mogul Glob., Inc.*, 282 B.R. at 311). Only one of the many movants "submitted documents that could even plausibly support a claim based on a written indemnification agreement, namely boiler-plate purchase orders that refer to documents containing indemnification language"—documents the court determined were "'too thin a thread with which to pull [the movants] into the [debtors'] bankruptcy.'" *Id.* at 376 (quoting *Fed.-Mogul Glob.*, 282 B.R. at 312). More specifically, the lower court declined to "believe that a manufacturer may write its own invitation to the table of any of its suppliers' bankruptcies by including a boilerplate indemnification clause in its purchase orders," rather than negotiating for contractual indemnities. *Fed.-Mogul Glob.*, 282 B.R. at 312.

Accordingly, the district court determined that "[n]o asset of the estate [was] threatened," and thus the facts did not fit within *Pacor*'s "related to" standard. *Id.* at 311. On appeal, the Third Circuit, "remain[ing] a step away from reaching the merits" and applying a "clear error" standard of review, simply declined to issue a writ of mandamus with respect to the district court's finding that it lacked "related to" jurisdiction on the basis of the tenuous, common law indemnification and contribution rights. *Fed.-Mogul.*, 300 F.3d at 379–84.

Contrary to Plaintiffs' suggestion, the facts here are readily and critically distinguishable from *Federal-Mogul*.[17] J&J is the only movant and only J&J's talc products, supplied exclusively by Debtors, are at issue in the State Court Talc Claims. More importantly, as set forth in the Venue Motion, the State Court Talc Claims, including Plaintiffs' here, easily satisfy the post-*Pacor* standard for "related to" jurisdiction. Indeed, J&J's indemnification claims against Debtors vested immediately upon the filing of the State Law Talc Claims—without regard to the State Court Talc Claims' resolution in court or the need for subsequent lawsuits—because contractual language states that the Debtors are to "indemnify, defend and hold harmless" J&J "from and against all liabilities" arising out of violations alleged in these types of personal injury claims. *See, e.g.*, Dkt. Nos. 1-9 and 1-10, Ex. C (Parts 7 and 8), Nolan Decl., Ex. 2 (1989 Agreement) § 10; Ex. 3 (2001 Agreement) § 7(a)(iv). Other contractual language requires Debtors to indemnify J&J "for any cost, loss, damage or expense suffered which arises from" the Debtors'-supplied talc not meeting specifications. Dkt. No. 1-10, Ex. C (Part 8), Nolan Decl., Ex. 3 (2001 Agreement) §7(a)(i). Therefore, Plaintiff's reliance on *Cenith Partners, L.P. by Rabinovitz v. Hambrecht & Quist (In re Videocart, Inc.)*, 165 B.R. 740 (1994) is also misplaced. In *Cenith Partners*, the alleged indemnity

[17] The other cases on which Plaintiffs rely are likewise factually distinguishable from this case. *See, e.g.*, *Pacor*, 743 F.2d at 995-96 (no "related to" jurisdiction on the basis of potential non-contractual indemnification claims "not giv[ing] rise to any automatic liability on the part of the estate," and where "[t]here would therefore be no effect on administration of the estate, until such time as Pacor may choose to pursue its third party claim"); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 231–32 (3d Cir. 2004) (noting a lack of "express indemnification obligations" asserted within a prepackaged Chapter 11 reorganization plan that attempted to channel all asbestos claims against debtor and non-debtors through a post-confirmation trust); *In re W.R. Grace & Co.*, 591 F.3d 164, 172–73 (3d Cir. 2009) ("[A]n entirely separate action would be necessary for any liability incurred by Montana to have an impact on Grace's estate. Specifically, Montana would first have to be found liable by its state courts and would then have to successfully bring an indemnification or contribution claim against Grace in the Bankruptcy Court."); *Skylark v. Honeywell Int'l, Inc.*, No. 01-5069-CIV, 2002 WL 32101980, at *3 (S.D. Fla. Jan. 25, 2002) (finding common law cross-claims for indemnity/contribution alone cannot invoke "related to" jurisdiction); *New Horizon of NY LLC v. Jacobs*, 231 F.3d 143, 155 (4th Cir. 2000) (no "related to" jurisdiction arising from civil contempt and common law claims having no impact on bankruptcy estate, with no allegations of indemnification, shared insurance, or unity of interests).

claims required a finding of liability. *Id.* at 744. This is in stark contrast to J&J's indemnity claims that vested the moment the State Law Talc Claims were filed.

Indemnifiable defense costs began accruing on the day Plaintiffs filed their complaint. Thus, the contractual indemnification claims implicated here are *not* contingent on whether or not J&J "denies any liability to [Plaintiffs]." Pls. Mem. at 11. Nor are J&J's contribution and indemnity claims merely "speculative," as Plaintiffs contend. *Id.* at 10. No matter the verdict, and no matter whether contractual disputes remain, Plaintiffs' lawsuit against J&J will impact the Debtors' estates. The lower court in *Federal Mogul* specifically recognized that such absolute indemnification rights "plainly establish[] a sufficient nexus between suits against [non-debtors] and the administration of the bankrupt's estate." *In re Fed.-Mogul Glob., Inc.*, 282 B.R. at 309 (citing *A.H. Robins*, 788 F.2d at 1007–08); *see also In re Millennium Lab Holdings II, LLC*, 591 B.R. 559, 583 (D. Del. 2018) (finding "related to" jurisdiction on the basis of "contractual obligations to advance defense costs to the indemnified released parties before any final determination on the merits and without regard to the substance of the underlying putative claims against them"); *In re Lower Bucks Hosp.*, 488 B.R. at 316, *aff'd*, 571 F. App'x 139 (3d Cir. 2014) (finding "related to" jurisdiction over class action against non-debtor on basis of contractual indemnification language imposing an obligation on debtor "to assume the defense and the expense of defending against [the] claims, even though [the non-debtor's] liability has not yet been established" because such an "indemnification obligation, at least in part, was triggered upon the filing of the class action against [non-debtor]; and, it is not contingent upon a finding of liability").

Indeed, in *Messerlian v. A.O. Smith Corp. et al.*, C.A. No. 09-393S, 2010 WL 308981, at *3 (D.R.I. Jan. 25, 2010), this Court held that the "claimed existence of an indemnification agreement running from the [bankrupt entity] to [the removing party]" was sufficient to confer

"related to" jurisdiction for a bankruptcy removal pursuant to 28 U.S.C. § 1452. In *Messerlian,* the plaintiffs in four asbestos cases brought actions in the Rhode Island Superior Court for alleged injuries from exposure to asbestos from products manufactured by different defendants, including defendant Detroit Diesel Corp. *Id.* at *1. Detroit Diesel – like J&J in the present action – removed the cases to this Court pursuant to 28 U.S.C. § 1452, based on an earlier bankruptcy filing by General Motors Corp ("GM"). *Id.* Detroit Diesel asserted that General Motors was obligated to indemnify Detroit Diesel for any liability associated with the claims against it asserted by plaintiffs, due to an indemnification agreement between the two companies. Detroit Diesel – again, like J&J – argued that the personal injury asbestos claims against it were "related to" to the GM bankruptcy because, by virtue of the indemnification agreement, "resolution of such claims could conceivably have an effect on the GM bankruptcy estate." *Id.*

The Court agreed that it had "related to" subject matter jurisdiction over the claims against Detroit Diesel under 28 U.S.C. § 1334. *Id.* at *3. The Court first set forth the "broad *Pacor* test" for determining whether a civil proceeding is related to bankruptcy: "the test . . . is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*." *Id.* at *1 (quoting *Pacor*, 743 F.2d at 994 and noting the *Pacor* court's "emphasis in original"). The Court held:

> [A]pplying the broad *Pacor* test discussed above, I conclude that Plaintiffs' claims against [Detroit Diesel] could "conceivably" have an impact on the GM bankruptcy estate due to the claimed indemnification obligation of GM and thus they are "related to" the GM bankruptcy within the meaning of 28 U.S.C. § 1334.

*Id.* at *3[18]; *see also Haber v. Massey*, 904 F. Supp. 2d 136, 145 (D. Mass. 2012) (holding that plaintiff's personal injury claims against removing defendant were "related to" the debtor's

[18] Plaintiffs make no attempt to distinguish the Court's holding in *Messerlian* in favor of "related to" jurisdiction.

bankruptcy and rejecting plaintiff's assertion that the personal injury claims would have no effect on the debtor's estate; "tort actions are related to a debtors' bankruptcy proceeding because 'any disposition of [issues in a tort action] will be related to a determination of [the debtor's] liability and would also bear upon any resultant contribution owed by [the debtor]") (quoting *In re Nutraquest*, 2004 U.S. Dist. LEXIS 29143, at *40-41).[19]

Even setting aside the import of J&J's and the Debtors' contractual indemnification obligations, "related to" jurisdiction also exists over this case by virtue of shared insurance between J&J and the Debtors which threatens to deplete the pool of assets in the estate available for creditors. Indeed, the Debtors themselves have represented before the Bankruptcy Court that they "have the right to seek proceeds from various insurance policies issued to J&J and its subsidiaries with total aggregate limits of approximately $2 billion." Dkt. No. 1-9, Ex. C (Part 7), Nolan Decl., Ex. 1 (First Day Decl.) ¶ 42. Thus, every dollar J&J spends defending against the State Court Talc Claims depletes a pool of funds that the Debtors have laid claims to, potentially reducing distributions to their creditors. Further, because the lawsuits involve the same products containing the Debtors' talc, J&J's and the Debtors' shared identity of interest supports jurisdiction.

The case law Plaintiffs wield confirms the decisive impact of these additional bases for jurisdiction. For example, in *Federal-Mogul*, in distinguishing the case before it from *A.H. Robins*, the district court noted that the question of common insurance in *A.H. Robins* "created a link decisively favoring bankruptcy jurisdiction." 282 B.R. at 310. And on appeal, the Third Circuit in *Federal Mogul* cited with approval the Fifth Circuit's analysis in *Arnold v. Garlock, Inc.*, 278 F.3d

[19] The courts in *Messerlian* and *Haber* ultimately ordered remand of the actions to the state court under the doctrines of permissive abstention and equitable remand. However, the facts favoring permissive abstention and remand in those cases are distinguishable from the circumstance in the present action, as discussed in Section V, *infra*.

426 (5th Cir. 2001), noting that the *Garlock* court distinguished the "unity of identity between the debtor and the [non-debtors]" in *In re Dow Corning Corp.*, 86 F.3d at 493, where "each of the [non-debtors] was closely involved in using the same material, originating with the debtor, to make the same, singular product, sold to the same market and incurring substantially similar injuries," from circumstances "where the co-defendants variously use[d] asbestos for brake friction products, insulation, gaskets, and other uses." *Fed.-Mogul Glob., Inc.*, 300 F.3d at 384 (quoting *Garlock, Inc.*, 278 F.3d at 440).[20]

Here, the State Court Talc Claims present precisely the same unity of identity as in *Dow*; they arise out of a single type of product (two products total) manufactured by J&J and supplied exclusively by Debtors, sold to a uniform market of consumers allegedly incurring the same types of injuries. Any liability of J&J derives from Debtors'-supplied talc, as the presence of Debtor Imerys Talc America, Inc. as a co-defendant in approximately 90% of talc-related actions against J&J underscores. *Cf. In re TK Holdings, Inc.*, Nolan Decl. Ex. 14 (TKH Hr'g Tr.) at 16 ("This case before me today is not analogous to an asbestos case where there are often dozens of potentially responsible parties, each one effectively to the exclusion of the others and a persistent and legitimate question of whether a plaintiff has any actual relationship to a particular defendant.

---

[20] *Accord Combustion Eng'g*, 391 F.3d at 230–31 (distinguishing "single product" in *Dow* from claims concerning different products, materials, and markets in *Combustion*). The *Pacor* and *Skylark* decisions Plaintiffs cite, in addition to not involving contractual indemnity claims, also did not involve any shared insurance claims, nor arguments that there was an identity of interests between the movants and debtors. The claims against the state of Montana in *W.R. Grace* did not involve contractual indemnity or shared insurance claims and there, the Third Circuit declined to find that an identity of interests existed between Montana and the debtor, an asbestos product producer because—unlike with J&J and Debtors—these parties' potential liabilities arose from entirely different duties and circumstances. *W.R. Grace & Co.*, 591 F.3d at 173. And in *Combustion Engineering*, the Third Circuit explained that it would have remanded for the district court to further assess and remedy its "insufficient findings of fact" on shared insurance issues but refrained from doing so on alternative, unrelated grounds. *Combustion Eng'g,* 391 F.3d at 232–33. There, the court also found a "unity of interest" lacking where "the asbestos-related personal injury claims [against debtors and non-debtors arose] from different products, involved different asbestos-containing materials, and were sold to different markets" *Id.* at 231. Again, as in *W.R. Grace,* those facts in no way resembled the exclusive talc supply relationship between Debtors and J&J. *See generally* Venue Motion, Argument II.C.

Here, every single claimant knows the vehicle they purchased and can establish the fact that it contains a Takata airbag system."). Debtors are, effectively, the true party in interest in the Talc Claim actions. For this reason, Plaintiffs fail in their attempt to equate the posture of the State Court Talc Claims to traditional asbestos mass tort cases by seizing on allegations that J&J's talcum powder products were contaminated with asbestos. There is no black-letter carve out for "asbestos cases" and there is no comparison between the narrow allegations of contamination in J&J's *two* products supplied *exclusively* by Debtors, and traditional asbestos cases involving multiple suppliers, multiple products, and multiple duties. The State Court Talc Claims are nothing like the claims at issue in *Federal-Mogul*, *Garlock*, *Combustion Engineering*, and *W.R. Grace*.

Plaintiffs mistakenly contend that J&J's arguments are based on "[t]he potential that J&J might someday have contribution and indemnity claims against the Debtors" and that J&J "[has] failed to cite to a single example of a contribution or indemnity claim brought against [Imerys.]" Pls. Mem. at 10. These arguments are wholly inaccurate, and misunderstand the critical distinction between common law indemnity claims routinely found insufficient for jurisdiction and contractual rights to indemnification that have already accrued under their express terms. J&J here asserts that the State Court Talc Claims enjoy "related to" jurisdiction based on contractual indemnity claims, which routinely support jurisdiction under the case law. To show this much, J&J has set forth, with supporting documentation and citation to express language, contractual indemnity rights between J&J and Debtors. Whether contractual disputes remain or defenses may be asserted is of no consequence. *Cf. In re LTC Holdings, Inc.*, 587 B.R. 25, 38–39 (Bankr. D. Del. 2018) (finding "related to" jurisdiction on the basis of a contractual indemnification claim, reasoning that "[a]ny possible defenses by the Debtors against [non-debtor's] claim are not enough to derail jurisdiction over [action against non-debtor]. In other words, the Debtors' liability to [non-

debtor] under the indemnification is not contingent on a finding of liability. . . . [The] indemnification claim has fully vested and can be acted upon at any point during the [action]"); *see also In re W.R. Grace & Co.*, 386 B.R. 17, 28–29 & n.45 (Bankr. D. Del. 2008) (finding "related to" jurisdiction over claims against non-debtor on the basis of indemnification right and shared insurance although "[d]ebtors do not acknowledge liability to [non-debtors] under any of these circumstances"); *In re W.R. Grace & Co.*, 315 B.R. 353, 357–58 (Bankr. D. Del. 2004) (validity or ambiguity of contract setting forth indemnity is not relevant to determination of "related to" jurisdiction).[21]

Whether, in response to Plaintiffs' discovery requests in a suit brought by Plaintiffs, J&J discloses indemnity or insurance agreements is irrelevant to the "related to" jurisdiction standard under 28 U.S.C. § 1334(b). These agreements are implicated only to the extent they bear on J&J's ability to satisfy a judgment. "Related to" jurisdiction exists over a claim so long as it "could conceivably have any effect on the estate being administered in bankruptcy." *Pacor*, 743 F.2d at 994. J&J's indemnification and shared insurance rights implicating Debtors' estates here do not depend on the existence of a judgment against J&J, or J&J's ability to satisfy such judgment.

Further, it is of no consequence whether (1) the Debtors were ever named or remain as co-defendants with J&J in a case; or (2) whether plaintiffs' claims against Debtors have been stayed and/or severed, as the Court in *Messerlian* confirms. *See Messerlian*, 2010 WL 308981, at *1 ("[T]he proceeding need not . . . be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and

[21] The case law on which Plaintiffs rely is inapt. *See, e.g., In re Asbestos Litig.*, CV No:01-1790-PA, 2002 U.S. Dist. LEXIS 3083, at *11 (D. Or. Feb. 1, 2002) ("Defendants, who have the burden of establishing jurisdiction, assert hypothetical indemnity and contribution claims against Federal Mogul with almost no factual support.").

administration of the bankruptcy estate.'") (*quoting Pacor*, 743 F.2d at 994 ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus *the proceeding need not necessarily be against the debtor or against the debtor's property.*") (emphasis added)). *See also Bethlahmy v. Kuhlman (In re ACI-HDT Supply Co.)*, 205 B.R. 231, 237 (9th Cir. Bankr. App. Panel 1997) ("[A] civil proceeding is 'related to' the bankruptcy if its outcome could conceivably have any effect on the bankruptcy estate. *The proceeding need not be against the debtor or the debtor's property*. It is sufficient if the 'outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.'") (emphasis added) (*quoting In re Fietz,* 852 F.2d 455, 457 (9th Cir. 1988)); *see also Pacor*, 743 F.2d at 994 ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, *the proceeding need not necessarily be against the debtor or against the debtor's property.*") (emphasis added); *In re Montreal Maine & Atl. Ry., Ltd.*, No. 1:13-MC-00184-NT, 2014 WL 1155419, at *1, *12 (D. Me. Mar. 21, 2014) (granting transfer under 28 U.S.C. § 157(b)(5) even though claims against the debtors had been dismissed, and in actions where debtors had not been named as defendants); *W.R. Grace & Co.*, 386 B.R. at 23–30 & n.33 (exercising "related to" jurisdiction in more than 100 asbestos-related personal injury suits against non-debtor railroad, most of which did not name any debtors as co-defendants); *A.H. Robins,* 788 F.2d at 1016 (district court had jurisdiction to stay and transfer, pursuant to § 157(b)(5), cases against non-debtor co-defendants of debtors subject to stay).

## IV. This Court Should Not Conduct an Abstention Analysis, and Any Such Analysis Disfavors Abstaining Here

### *A. The Delaware District Court is the Proper Court to Analyze Abstention*

As explained above, under § 157(b)(5), it is the Delaware District Court's exclusive mandate to set venue for Plaintiffs' claims against J&J. *See Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 708 (D. Del. 2006) (the Delaware District Court recognizing, under § 157(b)(5), its "sole authority to determine the appropriate venue for [actions alleging] personal injury tort and wrongful death claims against, among others, [non-debtors over which the court has 'related to' jurisdiction]" where related bankruptcy is pending in that district); *see also A.H. Robins*, 788 F.2d at 1011 ("Section 157(b)(5) . . . expressly confers on the district court sitting in bankruptcy and having jurisdiction of the bankruptcy proceedings the power to fix the venue of any tort case against the debtor pending in other districts."). Thus, should the Delaware District Court find that it has jurisdiction, remand will be inappropriate unless *that* court chooses, against a "strong legislative presumption in favor of transfer," to abstain following abstention analyses. *Nutraquest*, 2004 U.S. Dist. LEXIS 29143, at *43. Accordingly, because J&J has moved under § 157(b)(5) to fix venue, it is the Delaware District Court rather than this Court that should engage in any abstention analyses or otherwise consider remand issues in the first instance. *Cf.*, *e.g.*, *Hopkins*, 342 B.R. at 710; *New England Compounding*, 496 B.R. at 270. Moreover, now that the Venue Motion is fully briefed and pending before the Delaware District Court, a brief pause is appropriate before this Court engages in an abstention analysis.

### B. *Mandatory Abstention is Inapplicable Here Because 28 U.S.C. § 157(b)(4) Exempts Personal Injury and Wrongful Death Claims*

Mandatory abstention is inapplicable in this case. Although Plaintiffs rely on 28 U.S.C. § 1334(c)(2), Plaintiffs overlook the exemption Congress created in 28 U.S.C. § 157(b)(4).[22] Under § 157(b)(4), "non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2)." In turn, § 157(b)(2)(B) describes proceedings that may result in "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11."

Courts read the § 157(b)(4) exemption broadly, especially given Congress's recognition of the "potentially deleterious effects on a debtor's estate" that may be caused by "the unpredictable and substantial verdicts that are often produced in personal injury tort and wrongful death claims." *Beck v. Victor Equip. Co.*, 277 B.R. 179, 180–81 (S.D.N.Y. 2002). Thus, the exemption properly applies to personal injury or wrongful death claims against a debtor's indemnitee, like Plaintiffs' claims against J&J. *See, e.g.*, *New England Compounding*, 496 B.R. at 270–72 ("If the underlying harm giving rise to the estate's potential liability involves personal injury or wrongful death, the claim against a third-party concerning that harm is, in substance, a 'personal injury tort or wrongful death claim against the estate' and therefore covered by the exception in § 157(b)(2)(B)."); *Abbatiello v. Monsanto Co.*, No. 06 CIV. 266 (KMW), 2007 WL 747804, at *3 (S.D.N.Y. Mar. 8, 2007) ("Here, the exception to mandatory abstention also applies to litigation against [non-debtors] Pharmacia and New Monsanto, because [debtor] Solutia is obligated to indemnify Pharmacia and

---

[22] Accordingly, the five pages that Plaintiffs devote to analyzing core and non-core proceedings and mandatory abstention is of no moment. *See* Pls. Mem. at 11–16.

New Monsanto for any judgment awarded against them. Mandatory abstention is thus inapplicable to this action.").[23]

### *C. This Court Should Decline to Permissively Abstain*

Permissive abstention is also unwarranted. Although a district court may abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law," 28 U.S.C. § 1334(c)(1), courts have questioned whether permissive abstention is proper in connection with a § 157(b)(5) transfer because of its statutory purpose.[24] Accordingly, permissive abstention should be "rarely invoked" in circumstances like these. *Beck*, 277 B.R. at 181.

Plaintiffs acknowledge that the permissive abstention analysis under § 1334(c)(1) is "essentially the same" as an equitable remand analysis under § 1452(b). Pls. Mem. at 13; *see In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 334 (S.D.N.Y. 2003). Accordingly, the same equitable considerations that overwhelmingly support denial of the Remand Motion under § 1452(b), *see infra* Section V, also disfavor permissive abstention under § 1334(c)(1).[25]

## V. **Considerations Under Equitable Remand Support Denying Plaintiffs' Remand Motion**

This Court should not expend its resources in deciding the Remand Motion until the Delaware District Court rules on the now fully-briefed Venue Motion. But if this Court does decide

---

[23] *See also Hopkins*, 342 B.R. at 709–10 (mandatory abstention does not apply, per § 157(b)(4), "to the liquidation of personal injury tort or wrongful death cases," including those not "against the debtor or the debtor's property"); *Nutraquest, Inc.*, 2004 U.S. Dist. LEXIS 29143, at *44 (concluding mandatory abstention does not apply to cases, including against non-debtors, transferred pursuant to § 157(b)(5)); *Berry v. Pharmacia Corp.*, 316 B.R. 883, 889 (S.D. Miss. 2004) ("[T]he rationale for exempting personal injury and wrongful death claims against the debtor's estate from the mandatory abstention provision applies fully to the claims against [non-debtor defendant].").

[24] *See In re Pan Am. Corp.*, 950 F.2d 839, 845 (2d Cir. 1991) (permissive abstention would "contraven[e] the legislative history"); *Beck*, 277 B.R. at 181 (discretionary abstention would "undercut the statutory purpose of § 157(b)(4)"); *see also In re Nutraquest, Inc.*, 2004 U.S. Dist. LEXIS 29143, at *43 (recognizing that "federal courts have a virtually unflagging obligation . . . to exercise" their jurisdiction).

[25] J&J also refers the Court to its Venue Motion, Argument III.B, for a more extensive discussion of the permissive abstention factors under § 1334(c)(1).

to consider the Remand Motion prior to a ruling, it should not exercise its discretion under § 1452(b) to remand this action because equitable considerations favor centralized adjudication of the Talc Claims in the District of Delaware. Equitable grounds for remand under § 1452(b) have been interpreted to include a "preference for having an entire dispute resolved in one court." 2 Collier on Bankruptcy ¶ 3.07[5], at 83–85 (Lawrence P. King et al. eds., 15th. ed. rev. 1996). In addition, courts consider a non-exhaustive list of factors to determine whether remand is appropriate: (1) whether remand would prevent uneconomical use of judicial resources; (2) what effect remand would have on the administration of the bankruptcy estate; (3) whether the case involves questions of state law better addressed by state court; (4) comity; (5) prejudice to involuntarily removed parties; (6) whether remand will lessen the possibility of inconsistent results; and (7) the expertise of the court in which the action originated. *See, e.g.*, *In re Riverside Nursing Home*, 144 B.R. 951, 956 (S.D.N.Y 1992); *Williams v. Shell Oil Co.*, 169 B.R. 684, 692–93 (S.D. Cal. 1994).

Here, the flood of personal injury and wrongful death claims arising out of alleged exposure to the Debtors' talc caused the filing of the Debtors' Chapter 11 Case. As explained, these claims' resolution will impact the bankruptcy estates, and thus are "related to" Debtors' bankruptcy.[26] Therefore, they will also impact the overall theory, timing, and implementation of any chapter 11 plan. With this in mind, J&J removed this action and invoked § 157(b)(5) in pursuit of a centralized venue for adjudication of the threshold issues, that will result in equitable and uniform outcomes on those threshold issues for the Debtors' creditors—including the thousands of plaintiffs

[26] Nor is the degree of relatedness remote. *See* Pls. Mem. at 10. Debtors' have themselves represented to the bankruptcy court that they are J&J's sole talc supplier and that they have rights to proceeds from various insurance policies issued to J&J. *See* Dkt. No. 1-9, Ex. C (Part 7), Nolan Decl., Ex. 1 (First Day Decl.) ¶¶ 18, 38, 42. Similarly, across the State Court Talc Claims, plaintiffs do not allege that J&J ever "added" asbestos to the talc it received from Debtors. Plaintiffs consistently allege that J&J bottled talc, supplied by Debtors, contaminated in the mines from which it was sourced.

prosecuting similar claims and actions across the country—the Debtors' themselves, and J&J. Such adjudication will promote efficiency and preservation of judicial resources.

These considerations weigh strongly against abstention. *See Montreal Maine*, 2014 WL 1155419, at *12 ("[J]udicial economy and efficiency concerns . . . though insufficient to create bankruptcy-relatedness jurisdiction, do weigh in the determination to retain jurisdiction."). J&J's goal, through removal and the Venue Motion, is to transfer this action and all State Court Talc Claims to a single court with the resources to prevent disparate outcomes by, for example, holding a single general causation hearing, setting bellwether trials, and/or sending cases to federal court venues around the country for expedited trials when appropriate. Remand would frustrate this equitable result. *See Nutraquest*, 2004 U.S. Dist. LEXIS 29143, at *45 (finding abstention improper because "[t]he centralization of all personal injury and wrongful death claims [including those against non-debtors] will assist in 'developing a reasonable plan of reorganization' or orderly plan of liquidation 'and at the same time assure fair and non-preferential resolution of outstanding claims.'") (quoting *In re Dow Corning Corp.*, 86 F.3d at 496); *New England Compounding*, 496 B.R. at 273 (finding abstention would be "counterproductive" to judicial efficiency and the fair and efficient distribution of the estate); *In re Pan Am. Corp.*, 950 F.2d at 845 (describing the "manifest purpose of [§] 157(b)(5)" as "consistent with Congress' desire to eliminate the confusion, delay and inefficiencies associated with the Bankruptcy Act's limited jurisdictional scheme."). Thus, factors (1), (2), and (6) overwhelmingly support denial of the Remand Motion and outweigh any countervailing considerations.

While it is true that Plaintiffs' claims involve questions of state tort law, the state law and comity considerations contemplated in factors (3), (4), and (7) also do not favor remand. By enacting 28 U.S.C. § 157, Congress specifically "singled out" personal injury claims, which are

"almost always governed by state law," "as the very ones it wanted transferred." *In re Twin Labs.*, 300 B.R. at 841. Indeed, the thousands of personal injury claims against the Debtors, which will be handled in Delaware, similarly involve issues of state law. The District of Delaware to which J&J seeks to transfer Plaintiffs claims is best equipped to address them, collectively with the State Court Talc Claims, in light of the fact that such claims are proceeding all across the country. Moreover, remand based on predominance of state law questions is only warranted where "a particularly unusual question" or "unsettled questions" of state law exists. *In re Pan Am. Corp.*, 950 F.2d at 846. Plaintiffs' claims consist of straightforward negligence claims. Plaintiffs' state court complaint, Dkt. No. 1, Ex. A, asserts causes of action for negligence, breach of expressed and implied warranties, fraud and conspiracy, and loss of consortium. None of the law is "difficult, unsettled, or unfamiliar to a federal court." *See In re Twin Labs.*, 300 B.R. at 841. Moreover, while Plaintiffs' state court claims confer jury trial rights—a factor sometimes considered in abstention/remand analyses—there is no threat to those rights here; the very provision under which J&J has filed its Venue Motion fixes venue for where "claims shall be tried." 28 U.S.C. § 157(b)(5). To the extent comity bears significant weight in the analysis, it supports denial of the Remand Motion pending the District of Delaware's decision on the Venue Motion.

As for factor (5), while Plaintiffs argue that they will be unduly prejudiced if their case is not remanded, they fail to appreciate that there are 2,400 State Court Talc Claims brought by plaintiffs also awaiting their day in court, and nearly all of them have a cancer diagnosis. Declining to remand and allowing the orderly transfer of the State Court Talc Claims, including Plaintiffs', to the Delaware District Court under §§ 157(b)(5) and 1334(b) offers the best chance for an efficient adjudication of *all* plaintiffs' claims. Thus, plaintiffs' conditions should not override the purposes of § 157(b)(5) and the efficient operation of the courts. *Cf.*, *e.g.*, *W.R. Grace & Co.*, 386

B.R. at 35-36 (expanding a preliminary injunction to bar prosecution of pending actions against non-debtor railroad over whom the court found "related to" jurisdiction, and weighing the alleged hardship to "sick and dying" claimants caused by expanding the injunction, but finding that "[t]he diversion of time, effort and resources that would be required if the [actions] proceed would further delay the reorganization process, and implicate estate property," and noting that the parties were permitted to pursue testimony preservation procedures upon application).[27] On the other hand, if one accepted the argument that plaintiffs' *in extremis* conditions warranted remand rather than removal and transfer to one efficient forum, it would follow that multidistrict litigation of such claims is improper for the same reason. Yet over 80% of the talc cases against J&J have already been consolidated in an MDL. *See* Case No. 3:16-md-02738 (D.N.J.). By establishing this MDL, the federal courts have rejected the argument that certain plaintiffs' *in extremis* condition requires thousands of cases to be decided separately, and potentially inconsistently. *See also, e.g.*, *Abbatiello*, 2007 WL 747804, at *1, 4–5 (declining to equitably abstain and remand plaintiffs' claims alleging defendants produced chemicals causing "cancer, liver disease, and other serious illnesses" where debtor and non-debtor defendants were "inextricably intertwined" and remand would harm administration of debtor's estate); *Berry*, 316 B.R. at 889 (similar facts and reasoning); *W.R. Grace & Co.*, 386 B.R. at 33–35 (relative hardship of harm to debtor through related claims against non-debtor outweighed hardship to asbestos personal injury plaintiffs). Indeed, J&J's

[27] Moreover, for plaintiffs who allege their *in extremis* conditions put them at risk of missing their trials if their claims are transferred, J&J offers *de bene esse* depositions, and also anticipates that if the State Court Talc Claims are transferred, the Delaware District Court in its discretion will consider setting or transferring cases for expeditious jury trials by *in extremis* application.

Venue Motion stands to benefit all of Debtors' creditors, including all of the State Court Talc Claim plaintiffs.[28]

For much the same reasons, Plaintiffs' arguments that aggregating 2,400 cases on the District of Delaware's docket will be burdensome and that J&J's venue Motion amounts to forum shopping carry no weight. Pls. Mem. at 18. The Debtor, not J&J, chose the Delaware forum. J&J simply seeks to centralize claims (which impact the Debtors' estate) in the 20% of talc actions not already aggregated in the MDL. The Delaware District Court has the unique resources to adjudicate these claims consistently and efficiently. Thus, pursuant to § 157(b)(5), the proper venue for aggregation is the Delaware District Court. There is no parallel mechanism to aggregate all of the claims in a single state court forum. As J&J is not placing an unprecedented burden on the Delaware District Court, nor forum shopping, nor seeking to thwart the Debtors' choice of venue, the additional considerations Plaintiffs raise do not support remand.

The equitable considerations that led to the remands in *Messerlian* and *Haber* are readily distinguishable from the present case. In *Messerlian*, the Court noted the First Circuit's admonition that "the broad grant of 'related to' jurisdiction to the bankruptcy courts was 'to enable them to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates,'" and found that the removing party had not explained how allowing the plaintiff's asbestos injury claims to proceed in federal court "will further those bankruptcy interests." *Messerlian*, 2010 WL 308981, at *1 (quoting *In re Boston Reg'l Med. Ctr.*, 410 F.3d 100, 105 (1st Cir. 2005)).

---

[28] Plaintiffs argue that factor (5) weighs in favor of remand because "[i]n Rhode Island, . . . counsel for J&J removed the entire case, not merely the claims against J&J," thereby causing "significant prejudice to the other Defendants" who will be unable to get a "swift adjudication of Plaintiffs' claims against [them]." Contrary to Plaintiffs' assertion, there is no prejudice to any other defendant: as the Court has made clear, "[t]he claims made by the plaintiffs against any other defendants named in the Rhode Island Superior Court action have not been removed to this Court, and remain with the Rhode Island Superior Court." *See* Text Order dated May 23, 2019.

Here, J&J *has* explained how a centralized, uniform, efficient adjudication of issues involving thousands of claims necessarily impacting the Debtors' estates, will unquestionably "enable [the bankruptcy courts] to deal efficiently and effectively with the entire universe of matters connected with the bankruptcy estates." *Id.* at *1; *see also Haber*, 904 F. Supp. 2d at 147, 148 (noting that "'[a]t the heart of the matter [of permissive abstention] is what is in the best interest of the estate," and finding that "the trial of Plaintiff's case 'in a court unconnected with any of the bankruptcy proceedings' will not in any way enhance the bankruptcy court's ability to manage the 'universe of matters connected with the bankruptcy estates.'" (citations omitted). In the present action, the "universe of matters connected with the bankruptcy estates" is vast, and expanding, involving not a single claimant as in *Haber*, but thousands of claimants. That universe of matters is best managed by the centralized, uniform, consistent adjudication of the key issues affecting the bankruptcy estates – particularly in a single court – the Delaware District Court – as J&J has proposed.

## CONCLUSION

For the foregoing reasons, as well as those set forth in J&J's Notice of Removal and Venue Motion, this Court should deny Plaintiffs' Remand Motion or, in the alternative, hold it in abeyance pending a decision from the Delaware District Court on the Venue Motion.

DATED: May 31, 2019

Respectfully submitted,
JOHNSON & JOHNSON and
JOHNSON & JOHNSON CONSUMER INC.
By their Attorneys

By: */s/ James R. Oswald*

Mark O. Denehy (#3492)
mdenehy@apslaw.com
James R. Oswald (#5727)
joswald@apslaw.com
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607

## CERTIFICATE OF SERVICE

This certifies that on this 31st day of May, 2019, a copy of the within Memorandum of Law in Opposition to Plaintiffs' Motion for Remand was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's system.

*/s/ James R. Oswald*
James R. Oswald